# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **JAMIE MARIE BAKER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 3:12-00479** |
| **v.** | ) | **Judge Nixon / Knowles** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 8. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 11.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I.  INTRODUCTION

Plaintiff filed her application for Disability Insurance Benefits ("DIB") on August 25, 2008, alleging that she had been disabled since January 2, 2008, due to "[s]pinal cord damage;

1

eplisy [*sic*]; interstitial cystitis in bladder; anxiety; [and] bulging discs in back." *See, e.g.,* Docket No. 6, Attachment ("TR"), pp. 165, 201. Plaintiff's application was denied both initially (TR 75) and upon reconsideration (TR 77). Plaintiff subsequently requested (TR 89) and received (TR 99) a hearing. Plaintiff's hearing was conducted on October 21, 2010, by Administrative Law Judge ("ALJ") John Daughtry. TR 33. Plaintiff and vocational expert ("VE"), Gordon Doss, appeared and testified. *Id.*

On January 6, 2011, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 7-27. Specifically, the ALJ made the following findings of fact:

> 1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2009.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of January 2, 2008 through her date last insured of September 30, 2009 (20 CFR 404.1571 *et seq.*).
>
> 3. Through the date last insured, the claimant had the following combination of impairments that is severe: degenerative disc disease of the lumbar spine with spondylosis; history of a seizure disorder (epilepsy); left carpal tunnel syndrome; mild degenerative disc disease of the cervical spine; interstitial cystitis; depressive disorder; and anxiety disorder (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform

light work as defined in 20 CFR 404.1567(b) that is limited to occasional lifting and carrying of up to twenty pounds; frequent lifting and carrying of up to ten pounds; standing or walking for up to or about six hours in an eight-hour workday with normal breaks; sitting for up to or about six hours in an eight-hour workday with normal breaks; engaging in unlimited pushing and pulling; engaging in occasional postural activities of climbing stairs and ramps, balancing, stooping, kneeling, crouching, and crawling; avoiding climbing ladders, ropes, and scaffolds; and avoiding concentrated exposure to vibrations and all exposure to workplace hazards such as unprotected heights and moving machinery. Additionally, the claimant may have mental limitations, but is able to understand, remember, and carry out two-to-three step directions; can maintain concentration and persistence necessary to perform two-to-three step tasks; can have occasional contact with the general public; can relate to coworkers and interact with supervisors; and can adapt to infrequent changes in the workplace.

6.    Through the date last insured, the claimant was capable of performing past relevant work as an office clerk. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.    The claimant was not under a disability, as defined in the Social Security Act, at any time from January 2, 2008, the alleged onset date, through September 30, 2009, the date last insured (20 CFR 404.1520(f)).

TR 12-27.

On February 21, 2011, Plaintiff timely filed a request for review of the hearing decision.

TR 131. On March 13, 2012, the Appeals Council issued a letter declining to review the case

(TR 1-5), thereby rendering the decision of the ALJ the final decision of the Commissioner.

This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

If the Commissioner's findings are supported by substantial evidence, based upon the record as a

whole, then these findings are conclusive.  *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record.  Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.  Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process.  *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991).  The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision.  *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion."  *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance."  *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences.  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence

supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). However, if the Commissioner did not consider the record as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

(1) If the claimant is working and the work constitutes substantial

gainful activity, benefits are automatically denied.

(2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.

(4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5)  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 CFR §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181

(6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by

relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the

claimant is not significantly limited by a nonexertional impairment, and then only when the

claimant's characteristics identically match the characteristics of the applicable grid rule.

Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability

determination.  *Id.*  In such cases where the grid does not direct a conclusion as to the claimant's

---

[1] The Listing of Impairments is found at 20 CFR, Pt. 404, Subpt. P, App. 1.

disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ: (1) failed to consider all of Plaintiff's severe impairments; (2) erroneously concluded that the job of office clerk was past relevant work; (3) improperly evaluated and assessed Plaintiff's credibility; and (4) rendered a residual functional capacity ("RFC") finding that is not consistent with the medical evidence. Docket No. 8-1 at 1-2. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id*.

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is

overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6ᵗʰ Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6ᵗʰ Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

## 1. Evaluation of Severe Impairments

Plaintiff contends that the ALJ failed to properly consider all of her severe impairments. Docket No. 8-1 at 10. Specifically, Plaintiff argues that, although the ALJ found that Plaintiff's degenerative disc disease of the lumbar spine with spondylosis, history of seizure disorder (epilepsy), left carpal tunnel syndrome, mild degenerative disc disease of the cervical spine, interstitial cystitis, depressive disorder, and anxiety disorder, in combination, were severe impairments, the ALJ erroneously failed to find that Plaintiff's asthma and related chronic bronchitis with shortness of breath were also severe impairments, and failed to explain his reasoning for not so finding. *Id.* In support of her argument that her asthma and related chronic bronchitis with shortness of breath were also severe impairments, Plaintiff discusses evidence in the record reflecting her diagnosis of, and treatment for, asthma, chronic bronchitis, and shortness of breath, and argues that these medical records document these conditions to be severe impairments. *Id.* at 10-11

Defendant responds that the ALJ properly determined that Plaintiff's asthma was not a severe impairment, because there is no indication in the record that Plaintiff's asthma caused any significant limitations or contributed to any disability. Docket No. 11 at 7. Defendant argues that Plaintiff never alleged during the administrative process that her asthma caused any

significant limitations or contributed to disability.  *Id.* at 8.  Defendant notes that Plaintiff did not mention asthma when she applied for disability benefits and was asked what conditions limited her ability to work, when she was asked by the ALJ at her hearing why she applied for disability and what conditions she had that required treatment, or when she was asked by her attorney at her hearing what conditions, either alone or in combination, kept her from working.  *Id.* at 7. With regard to the medical evidence cited by Plaintiff, Defendant argues that, although Plaintiff's medical records reflect that she was diagnosed with asthma, there is no evidence that Plaintiff had any significant or ongoing issues or limitations related to the condition, and further asserts that the medical records actually attribute her shortness of breath to pneumonia and bronchitis. *Id.* at 8.

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe."  20 CFR § 404.1520(c). An impairment or combination of impairments is "severe" within the meaning of the Regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities; conversely, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities.  *Id.*; 20 CFR §§ 404.1521(a), 416.920(c), 416.921(a).  The Sixth Circuit has described the severity determination as a de minimis hurdle in the disability determination process, the goal of which is to screen out groundless claims.  *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988); *Farris v. Sec'y of Health and Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985). Where the ALJ finds that the claimant has at least one severe impairment and proceeds to complete the sequential evaluation process, however, the ALJ's failure to find that another

condition is a severe impairment cannot constitute reversible error. *See Maziarz v. Sec'y of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

The ALJ in the instant action found that, "[t]hrough the date last insured, the claimant had the following combination of impairments that is severe: degenerative disc disease of the lumbar spine with spondylosis; history of a seizure disorder (epilepsy); left carpal tunnel syndrome; mild degenerative disc disease of the cervical spine; interstitial cystitis; depressive disorder; and anxiety disorder (20 CFR 404.1520(c))." TR 16. After explicitly finding that Plaintiff had a combination of impairments that was severe, the ALJ continued his evaluation of the evidence and completed the sequential evaluation process. *See* TR 16-27. Because the ALJ specifically found that Plaintiff had at least one severe impairment and completed the sequential evaluation process, the ALJ's failure to find Plaintiff's asthma, chronic bronchitis, and/or shortness of breath, severe, whether proper or improper, simply cannot constitute reversible error. *See Maziarz v. Sec'y of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Accordingly, Plaintiff's argument on this point fails.

## 2. Evaluation of Past Relevant Work

Plaintiff next argues that the ALJ erroneously concluded that the job of office clerk was past relevant work. Docket No. 8-1 at 11, *citing* TR 25. Plaintiff argues that the work she performed in an office setting was "limited, sporadic, not full time, and below the minimum SGA threshold of past relevant work." *Id.* She notes that all of her office work was through temporary employment agencies and that each was for a very short duration. *Id.* Plaintiff argues that the ALJ failed to properly assess her limited exposure to office work in 1994, 1997, 2000, 2006, and 2007. *Id., citing* TR 182-88. Plaintiff argues that 1994 is outside of the fifteen year

relevant time period, and that even if it were not, the job would not be considered past relevant work as she did not meet the required SGA level of income for employment. *Id., citing* TR 180. Plaintiff argues that, in 1997, she earned $2,391.08 in office work, which is below the SGA level of income for employment. *Id.* She notes that the "other reported earnings in 1997 are associated with local food chains." *Id.* Plaintiff contends that she earned only $192.00 in 2000 doing office work, which is again, below the SGA level of income for employment. *Id.* With regard to the 2006 work, Plaintiff argues that the three short periods of her employment in office work jobs did not meet the durational requirement of past relevant work and that the earnings did not meed the SGA level of income for employment. *Id.* at 12. Regarding the 2007 work, Plaintiff contends that she earned only $62.00, which is again below the SGA level of income for employment. *Id.* at 12.

Plaintiff argues that the ALJ failed to "fully assess each of the criteria stated in the cited regulation." *Id., citing* 20 CFR 404.1560(b)(1) ("Past relevant work is work that you have done in the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it.") Plaintiff also argues that the ALJ "failed to consider the SSA ruling on past work found at Exhibits 10E and 12E," and failed to consider that two different SSA vocational consultants reviewed Plaintiff's work history and earnings information and concluded that Plaintiff's only past relevant work was the job of "waitress-informal," DOT code 311.477.030. *Id.* Plaintiff argues, therefore, that the ALJ: (1) was mistaken in his conclusion that Plaintiff's limited work as an office clerk falls within the definition of past relevant work as that term is defined by the SSA; and (2) incorrectly found that Plaintiff was capable of returning to past relevant work because the job he cited was not actually past relevant work. *Id.*

Defendant responds that the ALJ appropriately considered Plaintiff's past relevant work and made a proper alternate finding at step five of the sequential evaluation process. Docket No. 11. at 10. Specifically, Defendant argues that Plaintiff's work in 1994 is within the fifteen year relevant time period because it is "within 15 years of at least most - and possibly all - of the period adjudicated by the ALJ: January 2, 2008 through September 30, 2009." *Id., citing* 20 CFR § 404.1565(a). Defendant further argues that the Plaintiff fails to point to any evidence establishing that her earnings in 1997-2000 and 2006-2007 did not pass the threshold for substantial gainful activity at those times. *Id.* Defendant notes that, when there is a "significant change in a claimant's work pattern or earnings during the period of work at issue, the Commissioner will average a claimant's earnings over each separate period of work to determine if any of the work efforts were substantial gainful activity." *Id.*, *citing* 20 CFR § 404.1574a(c). Defendant argues that it is therefore "possible that Plaintiff's work . . . was substantial gainful activity depending on the length of each period of work." *Id.*

Defendant alternatively argues that even if Plaintiff's past work as an office clerk did not meet the threshold for substantial gainful activity, any error resulting from the ALJ's step four finding is harmless because the ALJ made an alternative finding at step five of the sequential evaluation process. *Id.*, *citing Davis v. Sec'y of Health and Human Servs.*, 915 F.2d 186, 188-89 (6th Cir. 1990) (affirming based on ALJ's alternative finding). Defendant contends that the ALJ properly concluded that Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy based on the vocational expert's testimony that an individual with the same education, work experience, and residual functional capacity as Plaintiff could perform the representative occupations of a house sitter, surveillance

systems monitor, and hand packer.  Docket No. 11 at 10-11.

At step four of the sequential evaluation, the ALJ must determine whether the claimant has the residual functional capacity to perform the requirements of her past relevant work.  20 CFR § 404.1520(f).  "Past relevant work" means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last fifteen years or fifteen years prior to the date that disability must be established; the work must have lasted long enough for the claimant to learn to do the job; and the earnings must constitute SGA. 20 CFR §§ 404.1560(b) and 404.1565.  If the claimant has the residual functional capacity to do her past relevant work, the claimant is not disabled and the sequential evaluation ends at step four.

The ALJ made the following step four determination:

> Through the date last insured, the claimant was capable of performing past relevant work as an office clerk.  This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

TR 25.

Despite so finding, the ALJ actually continued on to step five of the sequential evaluation and performed a detailed step five analysis as follows:

> Although the claimant is capable of performing past relevant work, there are other jobs existing in the national economy that she is also able to perform.  Therefore, the Administrative Law Judge makes the following alternative findings for step five of the sequential evaluation process.
>
> The claimant was born on May 10, 1976 and was 33 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational

Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

In the alternative, considering the claimant's age, education, work experience, and residual functional capacity, there were other jobs that existed in significant numbers in the national economy that the claimant also could have performed (20 CFR 404.1569 and 404.1569(a)).

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

Through the date last insured, if the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21. However, the claimant's ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, through the date last insured, the Administrative Law Judge asked the vocational expert whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would have been able to perform the requirements of representative occupations such as house sitter, domestic service (DOT #309.367-

010), with about 250 jobs in the Tennessee regional economy and more than 30,000 jobs in the national economy; surveillance systems monitor (DOT #379.367-010), with about 625 jobs in the Tennessee regional economy and about 33,500 jobs in the national economy; and hand packer (DOT #599.687-010), which includes hand bender, tobacco industry (DOT #920.687-030), with 343 jobs in the Tennessee regional economy and 12,634 jobs in the national economy.

Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the vocational expert, the undersigned concludes that, through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

TR 26-27, *referencing* TR 66-67.

Plaintiff's contention that the ALJ's finding that her office work constituted past relevant work was erroneous and therefore warrants reversal or remand is misplaced, as is her contention that the ALJ should have considered the two SSA vocational consultants' opinions that she had only one past relevant job, which was not office work. Docket No. 8-1 at 11-12. Had the ALJ determined that Plaintiff could return to her past relevant work as an office clerk and ended the sequential evaluation at that point, the issue of whether Plaintiff's office work constituted past relevant work would be relevant; the ALJ in the instant action, however, continued on to step five of the sequential evaluation and conducted a proper step five evaluation, finding that "through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other

work that existed in significant numbers in the national economy." TR 27. As noted, the ALJ specifically cited the representative occupations of "house sitter, domestic service," "surveillance systems monitor," and "hand packer ... which includes hand bender, tobacco industry." *Id.*

As discussed above, at step five, "the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity." 20 CFR §§ 404.1520, 416.920. Because the ALJ continued on to step five of the sequential evaluation, conducted a proper step five analysis, and appropriately concluded that Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy, Plaintiff's arguments on this point fail.

### 3. Plaintiff's Credibility

Plaintiff contends that in finding that her subjective complaints were not fully credible, the ALJ did not properly evaluate and assess her complaints under SSR 96-7p. Docket No. 8-1 at 12-13. Specifically, Plaintiff argues:

> ... [T]he ALJ erred in detracting from the Plaintiff's credibility base on the fact that she has been able to perform some activity on a very minimal basis. By focusing on these few activities of daily living, the ALJ ignored the medical evidence, which shows that the Plaintiff is disabled. Therefore, the ALJ's decision is not supported by substantial evidence.

> Since the ALJ did not specifically state whether he found the claimant's testimony credible or not credible, and since he did not specifically state the amount of weight he assigned to that testimony, the ALJ violated SSR 96-7D [*sic*]. Plaintiff submits that this constituted material error.

*Id.* at 14.

16

Defendant responds that the ALJ followed the requisite two-step process for evaluating a claimant's subjective complaints and properly determined that Plaintiff's statements concerning the severity of her pain were not entirely credible. Docket No. 11 at 11. Defendant further responds that, contrary to Plaintiff's assertion, the ALJ explicitly found that "the claimant's medically determinable impairments could reasonably be expected to cause some symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that she alleged for the reasons discussed herein." *Id.*, *citing* TR 23. Defendant argues that the ALJ's discussion contains a lengthy analysis of Plaintiff's credibility in which the ALJ fully considered her testimony regarding the nature and extent of her symptoms and the resulting limitations. *Id., citing* TR 22. Defendant contends that, within that lengthy analysis of Plaintiff's credibility, the ALJ discussed each of the factors listed in SSR 96-7p, and ultimately concluded that Plaintiff's statements were not credible because, *inter alia*, they were inconsistent with the objective medical evidence, the medical opinion evidence, the responsiveness of her symptoms to treatment, and her daily activities. *Id.* at 13-16, *citing* TR 23-24. Accordingly, Defendant contends that the ALJ properly engaged in an extensive analysis of Plaintiff's credibility that comported with the requirements of SSR 96-7p, such that substantial evidence supports the ALJ's finding that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely credible. *Id.*

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined

17

medical condition must be of a severity which can reasonably be
expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d

Sess. 24) (Emphasis added); *see also* 20 CFR §§ 404.1529, 416.929 ("[S]tatements about your

pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*,

923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating

symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the

ALJ's personal observations, and the objective medical evidence contradict each other.").

When analyzing the claimant's subjective complaints, the ALJ must also consider the

following factors and how they relate to the medical and other evidence in the record: the

claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the

precipitating and aggravating factors; the type, dosage and effect of medication; and the other

treatment or measures to relieve the symptoms. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th

Cir. 1994) (*construing* 20 CFR § 404.1529(c)(2)). After evaluating these factors in conjunction

with the evidence in the record, and by making personal observations of the claimant at the

hearing, an ALJ may determine that a claimant's subjective complaints of pain and other

disabling symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th

Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667

F.2d 524, 538 (6th Cir. 1981).

With regard to Plaintiff's credibility, the ALJ in the instant action ultimately found:

> After careful consideration of the evidence, the undersigned finds
> that the claimant's medically determinable impairments could
> reasonably be expected to cause some symptoms; however, the
> claimant's statements concerning the intensity, persistence and

limiting effects of these symptoms are not credible to the extent that she alleged *for the reasons discussed herein*.

TR 23 (emphasis added).

When making his credibility determination, the ALJ discussed Plaintiff's testimony and the objective medical evidence as follows:

> As for her current complaints, the claimant testified that she has minor shaking during her seizures and that her last seizure was two months prior to the hearing. She stated that the frequency of her seizures depends on stress and that they usually occur every month to a couple of months. She testified that Keppra has "helped [her] a lot" and that it controls her seizures.

> As for her interstitial cystitis, she testified that she has to self-catheterize three times a day and that every six to eight weeks, she has to have a permanent catheter put in for two to three days because her bladder becomes so inflamed that she is unable to self-catheterize. The claimant testified that when her bladder is inflamed, it feels like it is "on fire" and that she sometimes cries because of the pain when she is unable to urinate.

> Regarding her back, she testified that she cannot sit up straight and has to bend over. She also stated that her back sometimes "pops" when she moves around. She testified that her doctors are now considering surgical intervention.

> As for her left wrist carpal tunnel syndrome, the claimant testified that she sometimes wears a brace when her wrist hurts.

> On a scale of one to ten, she testified that her overall pain on average is between four and five, and that at its worst it is an eight or nine. She stated that she takes her pain medication three times a day and experiences drowsiness for about an hour afterwards. She testified that she takes Ambien for insomnia and that she gets about four to five hours of sleep a night.

> Regarding her mental impairments, she testified that she is currently looking for a psychiatrist.

> As for her physical limitations, she testified that she can lift a

gallon of milk, sit for about one hour to one hour and a half at a time, stand for one hour at a time, and walk for a couple of blocks at one time. However, she testified that she could only sit for two hours in an eight-hour workday without pain, stand for an hour and a half to two hours in an eight-hour workday without pain, and walk for an hour to an hour and a half in an eight-hour workday. She stated that she would not be able to do these activities, in any combination, for a full workday.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that she alleged for the reasons discussed herein.

The evidence of record does not reflect that the claimant's impairments have resulted in such significant limitations as to render her disabled. The claimant regularly complained of back pain and radicular symptoms, and diagnostic testing suggested that she had some left lumbosacral radiculopathy. However, on physical examination by Dr. Falouji on July 11, 2008, the claimant was reportedly ambulating without difficulty and had no observable misalignment, asymmetry, crepitations, defects, tenderness, masses, effusions, decreased range of motion, instability, atrophy, or abnormal strength or tone in the head, neck, spine, ribs, or pelvis (Exh. 8F-8). She reportedly had intact sensation to pin prick, light touch, and vibration; intact and normal motor strength bilaterally in her upper and lower extremities; and normal reflexes bilaterally in her upper and lower extremities with down-going toes bilaterally (Exh. 8F-8). She reportedly had a positive Romberg sign, but had normal coordination and was able to tandem walk and heel-toe walk (Exh. 8F-8).

Additionally, the severity of the claimant's subjective complaints are questionable as, while undergoing physical therapy, she was reportedly able to help her father clean his garage and was not completely compliant with her home exercise program. Nevertheless, when compliant with the program, her symptoms improved and other than a couple of complaints of overall body pain in late 2008, she reported having a forty-percent improvement in her back symptoms. She stated that her back symptoms worsened after she had a seizure, but she also testified that she only

had seizures every one to two months. Records indicate that the claimant last attended physical therapy for her back on November 4, 2008, and never rescheduled for further treatment.

It appears that, despite having some ongoing complaints, the claimant's back pain was significantly improved with medication, as she reported to Dr. Johnson on March 25, 2009, that her pain, with treatment, was only a three on a ten-point pain scale, which was within her pain relief goal range. By April 22, 2009, her pain had decreased to a two. Additionally, on examination again by Dr. Falouji, she continued to have no observable limitations, other than reduced sensation to pin pricking in the distribution of the median nerve bilaterally and slightly increased deep tendon reflexes in her upper extremities (Exh. 8F-3).

On August 10, 2009, electromyography and nerve conduction testing of the claimant's lower extremities were within normal limits and demonstrated no electrophysiological abnormalities. By November 11, 2009, the claimant reported that her pain had actually worsened, but the medical evidence of record does not document any objective findings to support these subjective complaints. Subsequent treatment records do not document any changes in the claimant's condition that would warrant a finding of disability and on June 23, 2010, she denied having any joint, muscle, or back pain, and was reportedly observed moving around "quickly" without any problems.

As for the claimant's interstitial cystitis, the evidence of record generally documents little significant complaints, other than occasional dysuria and urine retention. The claimant testified that she has to self-catheterize three times a day and has to have a permanent catheter put in every two to three days [*sic*][2]. She also testified to having significant pain when having problems urinating or when her bladder becomes inflamed. However, despite these reported symptoms, the claimant is able to perform a number of physical activities, as reported to Dr. Blazina, and records note that she has even been able to ride motorcycles and go out to bars (Exh.

---

[2] Plaintiff actually testified: "every six-weeks or every eight-weeks, I have to go in and have a permanent catheter put in for two to three days." TR 46. This is likely a miswording, as the ALJ correctly noted Plaintiff's testimony earlier in his opinion. TR 22. Because the ALJ correctly noted Plaintiff's testimony in his decision and therefore was aware of her testimony on this point, this minor discrepancy is harmless.

19F-39, 49).

> Regarding her carpal tunnel syndrome, electrophysiological findings only suggested mild carpal tunnel syndrome and records do not indicate that this impairment has worsened or that the claimant has had to undergo surgical intervention.

> As for her seizures, the claimant testified that she only has a seizure every month to a month and a half (Exh. 7E). However, it is questionable whether the claimant's reports of seizures, as documented in the medical evidence of record, can be fully credited. There is only one documented incident, on July 28, 2009, while the claimant was being arrested for public intoxication, she reportedly stated, "'I have a [history] of seizures, so I think I will have one'" (Exh. 19F-41). There are references to claimant reports of seizures and prescribed anti-seizure medication; however, there are no objective EEG study results that confirm abnormal brain wave activity suggestive of a seizure disorder. Regardless, the viewing the case [*sic*] in a light most favorable to the claimant, she has been given the benefit of doubt regarding her reported history of seizure activity.

> Regarding her mental impairments, the claimant never sought any psychological or psychiatric treatment and evaluation by Dr. Blazina reflects that the claimant's depression and anxiety caused no more than moderate limitations.

> The overall evidence of record simply does not persuade the undersigned that the claimant's alleged impairments cause such limitations as to prevent her from maintaining employment of any kind. . .

TR 22-24, *referencing* TR 44-50, 60-62, 231, 282, 297, 303, 383-84, 406, 411, 427, 477, 491, 560-61, 609, 619.

The ALJ also discussed Plaintiff's inconsistent testimony regarding her drug and alcohol use, stating:

> . . . Moreover, her credibility is diminished due to her inconsistent testimony regarding her drug use. The claimant testified that she last used marijuana about two years ago. She stated that marijuana

helped to reduce vomiting from constant medication changes and to increase her appetite. She testified that she no longer uses marijuana because she was prescribed Marinol and, subsequently, Phenergan. However, the claimant also testified that she had never used any other street drugs, but medical records document that she tested positive for cocaine on June 25, 2008 (Exh. 3F-48). The claimant also testified that she did not drink alcohol often, but medical records demonstrate multiple admissions to UMC in 2009 for acute alcohol intoxication and a diagnosis of alcohol abuse (Exh. 19F). Records also document treatment for suspected alcohol intoxication on July 28, 2009, when the claimant was taken to UMC after reportedly trying to fight with a bartender while out at a local bar (Exh. 19F-39). On the same day, the claimant also reportedly had a bottle of Hydrocodone in her possession that was not prescribed to her, and it was noted on December 29, 2009, that the claimant exhibited drug-seeking behavior (Exh. 19F-41, 71). Additionally, as stated previously, she was reportedly discharged from two separate treatment programs for her use of substances in violation of pain management agreements.

TR 24, *referencing* TR 42-43, 56-57, 361, 475, 590, 600, 609, 611, 641.

As can be seen, contrary to Plaintiff's contentions, the ALJ: (1) specifically stated that he found Plaintiff's testimony to be "not credible to the extent that she alleged"; (2) thoroughly discussed Plaintiff's testimony and the evidence of record; and (3) provided a detailed discussion explaining the reasons for his credibility determination. *See* TR 22-24.

Plaintiff is also incorrect in her contention that the ALJ improperly detracted from her credibility based on the fact that she could perform some activities on a very minimal basis. As is demonstrated in the ALJ's decision, the ALJ explicitly considered all of Plaintiff's reported activities. In addition to the ALJ's discussion of Plaintiff's activities recounted above, the ALJ stated:

The claimant's activities also reflect that her impairments do not cause limitations to the degree alleged. As previously mentioned, the claimant is able to drive, perform household chores, care for

her pets and children, shop, bathe and dress herself without
assistance. Additionally, it appears that the claimant's impairments
have not kept her from going to bars and riding motorcycles (Exh.
19F-39, 49).

TR 25, *referencing* TR 303, 383, 609, 619.

As can be seen, the ALJ's decision specifically addresses in great detail not only the

medical evidence, but also Plaintiff's testimony and her subjective claims, clearly indicating that

these factors were considered. It is clear from the ALJ's detailed articulated rationale that,

although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on

medical findings that were inconsistent with Plaintiff's allegations. This is within the ALJ's

province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective

medical evidence against Plaintiff's subjective claims of pain and reach a credibility

determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th

Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight

and deference, particularly because the ALJ is charged with the duty of observing the claimant's

demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461,

463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions

among the medical reports, the claimant's testimony, the claimant's daily activities, and other

evidence. *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*,

742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)).

If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the

reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons

must be supported by the record (*see King*, 742 F.2d at 975).

As noted, after evaluating the evidence in its entirety, the ALJ determined that Plaintiff's subjective complaints were inconsistent with, and unsupported by, the evidence, and therefore, were not fully credible. TR 22-25 (*referencing* 42-50, 60-62, 231, 282, 297, 303, 361, 373-77, 383-84, 396, 406, 411, 427, 462, 475, 477, 491, 559-61, 563-66, 590, 600, 609, 611, 619, 641). The ALJ observed Plaintiff during her hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

## 4. Residual Functional Capacity

Plaintiff maintains that the ALJ erred when he failed to consider all probative evidence in making his residual functional capacity finding. Docket No. 8-1 at 15. Specifically, Plaintiff argues that the ALJ overlooked the evidence that fully established that she was disabled on January 2, 2008 because he: (1) failed to consider Plaintiff's asthma and its effect upon her ability to work; (2) failed to consider Plaintiff's need to engage in self-catheterization several times daily and to provide any limitations in the RFC to account for Plaintiff's interstitial cystitis; and (3) failed to include any manipulative limitations related to Plaintiff's carpal tunnel syndrome in the RFC assessment. *Id.* at 15-17. With regard to her asthma, Plaintiff specifically argues that the ALJ failed to consider that claimants with asthma are "generally fatigued, have a lack of energy, miss work often, and cannot be exposed to environmental hazards such as fumes, smoke, chemicals, fluctuations in heat and cold as well as wetness and humidity." *Id.* at 15-16. Regarding to her need to self-catheterize, Plaintiff specifically argues that the ALJ failed to consider the VE's testimony that the need to self-catheterize would require an employer to make

accommodations.  *Id.* at 16.  Plaintiff further contends that the ALJ erred by failing to provide limitations in the RFC assessment to account for this impairment.  *Id.*  With respect to her left carpal tunnel syndrome, Plaintiff argues that since the ALJ found it to be a severe impairment, he erred by failing to include manipulative limitations in the RFC.  *Id.* at 16-17.

Defendant responds that the ALJ properly considered all of the evidence of record in determining Plaintiff's residual functional capacity.  Docket No. 11 at 16.  Regarding Plaintiff's contention that the ALJ erred by failing to consider her asthma, Defendant responds that the ALJ did not need to consider Plaintiff's asthma because there is no indication from the evidence of record that Plaintiff's asthma caused any significant work-related limitations.  *Id.* at 17.  Defendant specifically notes that, although records document a history of asthma and that Plaintiff testified to using an inhaler, Plaintiff's treatment history "generally reflects only a couple of acute episodes of pneumonia and bronchitis that each resolved within a few days"; that Plaintiff never alleged during the administrative process that asthma contributed to her inability to work; and that Plaintiff admitted to smoking a pack of cigarettes a day.  *Id.*  Defendant further argues that even if the ALJ had included a limitation that Plaintiff needed to avoid exposure to air-borne irritants and poorly ventilated work spaces, it would not have affected his decision because the VE testified that the inclusion of such a limitation would not have affected his answers to the ALJ's hypothetical questions.  *Id.*  Regarding Plaintiff's contention that the ALJ erred by failing to consider her need to self-catheterize several times daily, Defendant responds that the ALJ specifically considered and discussed her need to self-catheterize due to her interstitial cystitis, and discussed the evidence of record relating to it.  *Id.* at 17-18 (*citing* TR 19, 22, 24, 52-54).  Defendant further argues that the VE testified that "the need to self-catheterize

three times a day 'would not disrupt employment or activities sufficiently to cause a person to be unemployable.'" *Id.* at 18, *quoting* TR 69.  Regarding Plaintiff's contention that the ALJ erred by failing to consider Plaintiff's left carpal tunnel syndrome, Defendant responds that the ALJ properly considered Plaintiff's electrophysiological findings, which, in March 2009, suggested only mild carpal tunnel syndrome, and in August 2009, indicated that the condition of Plaintiff's wrist was within normal limits. *Id.* at 18-19, *citing* TR 16, 24.

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs."  20 CFR Pt. 404, Subpt. P, App. 2 § 200.00(c).  With regard to the evaluation of physical abilities in determining a claimant's Residual Functional Capacity, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis.  A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 CFR § 404.1545(b).

The ALJ in the case at bar, after evaluating all of the objective medical evidence of record and Plaintiff's reported level of activity, ultimately determined that Plaintiff retained the following residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) that is limited to occasional lifting and carrying of up to twenty pounds; frequent lifting and carrying of up to ten

pounds; standing or walking for up to or about six hours in an eight-hour workday with normal breaks; sitting for up to or about six hours in an eight-hour workday with normal breaks; engaging in unlimited pushing and pulling; engaging in occasional postural activities of climbing stairs and ramps, balancing, stooping, kneeling, crouching, and crawling; avoiding climbing ladders, ropes, and scaffolds; and avoiding concentrated exposure to vibrations and all exposure to workplace hazards such as unprotected heights and moving machinery. Additionally, the claimant may have mental limitations, but is able to understand, remember, and carry out two-to-three step directions; can maintain concentration and persistence necessary to perform two-to-three step tasks; can have occasional contact with the general public; can relate to coworkers and interact with supervisors; and can adapt to infrequent changes in the workplace.

TR 13-14.

The ALJ was aware of or discussed each of the ailments listed by Plaintiff and the limitations these ailments imposed on Plaintiff's functioning. *See* TR 12-27. With regard to Plaintiff's argument that the ALJ erred by not considering her asthma and the effect upon her ability to work, as an initial matter, Plaintiff did not allege asthma when she applied for disability benefits (*see* TR 201), when she was asked why she applied for disability at the hearing (*see* TR 44), or when she testified at her hearing as to what conditions, either singly or in combination, kept her from working (*see* TR 59-60). Nevertheless, the ALJ was aware of Plaintiff's asthma because, in response to her attorney asking her at her hearing whether she had shortness of breath, Plaintiff responded, "I have asthma. I use an inhaler." TR 59. Significantly, the ALJ explicitly incorporated a limitation in one of his hypothetical questions posed to the VE that the hypothetical claimant should avoid concentrated exposure to air-borne irritants and poorly ventilated work spaces. TR 68. In response, the VE testified that even if the hypothetical

28

claimant needed to avoid concentrated exposure to air-borne irritants and poorly ventilated work spaces, she would still be able to perform the jobs of house sitter, surveillance systems monitor, and hand packer.[3]  TR 68.  Because the ALJ was aware of Plaintiff's asthma and incorporated a limitation for it into one of his hypothetical questions posed to the VE, the ALJ could properly rely upon the VE's response that a person with those additional limitations would still be able to perform the listed jobs.  Accordingly, the ALJ did not have to incorporate any such limitations into his RFC finding.

Regarding Plaintiff's contention that the ALJ failed to consider her need to engage in self-catheterization several times per day, the ALJ specifically acknowledged Plaintiff's need to self-catheterize as follows:

> As for her interstitial cystitis, she testified that she has to self-catheterize three times a day and that every six to eight weeks, she has to have a permanent catheter put in for two to three days because her bladder becomes so inflamed that she is unable to self-catheterize.  . . .
>
> . . .

_____

[3] The VE testified in pertinent part as follows:

> Q  All right. Let me add one more limitation and this goes to both the first and the second hypothetical.  If I add that the hypothetical individual should avoid concentrated exposure to air-borne irritants, poorly ventilated work spaces, would that impact the numbers cited in the first hypothetical or would that impact the answer that you gave to the second hypothetical?  And, that's all that's being added.
>
> A  Your Honor, it would not.

TR 68.

> . . . The claimant testified that she has to self-catheterize three times a day and has to have a permanent catheter put in every two to three days [*sic*]. She also testified to having significant pain when having problems urinating or when her bladder becomes inflamed. However, despite these reported symptoms, the claimant is able to perform a number of physical activities, as reported to Dr. Blazina, and records note that she has even been able to ride motorcycles and go out to bars (Exh. 19F-39, 49).

TR 22, 24, *referencing* TR 46-47, 383, 609, 619.

As can be seen, the ALJ noted that Plaintiff's daily activities as reported to Dr. Blazina were inconsistent with Plaintiff's reported systems. TR 24. The Regulations require the ALJ to incorporate only those impairments and limitations he finds credible; nevertheless, the ALJ asked the VE about Plaintiff's need to self-catheterize, and the VE testified that the need to self-catheterize three times per day "would not disrupt employment or activities sufficiently to cause a person to be unemployable."[4] TR 69. Again, because the ALJ was aware of Plaintiff's need to self-catheterize and asked the VE about it, the ALJ could properly rely upon the VE's response that a person with that need would still be employable and that the listed jobs would be

---

[4] The VE testified in pertinent part as follows:

Q    . . . Dr. Doss, if an individual had to engage in self-catheterization up to three times a day, each day, would that have any impact on the jobs that you have identified?

A    For a normal healthy person, except for the need to self-cath three times a day, would not disrupt employment or activities sufficiently to cause a person to be unemployable. And, my experience with that is in working with spinal cord injury patients who are placed in, for the most part, indoor settings.

TR 69.

appropriate. Accordingly, the ALJ did not have to incorporate any self-catheterization limitations into his RFC finding.

As to Plaintiff's contention that the ALJ failed to provide any limitations in the RFC to account for her interstitial cystitis, the ALJ discussed her interstitial cystitis as follows:

> The claimant also has a medical history positive for seizures and interstitial cystitis and has undergone bladder tacking and Foley catheter implantation (Ehxs. 1F-8; 3F-45). On June 25, 2008, she presented to UMC for abdominal pain and urinary retention, but an abdominal CT scan revealed no acute abnormalities of the urinary tract (Exh. 3F-45). On July 3, 2008, she presented to Dr. Luck complaining of bladder pain (Exh 11F-20). Dr. Luck noted that the claimant had received cortisone injections and had been prescribed Hydrocodone (Exh. 11F-20). He diagnosed her with interstitial cystitis and prescribed her Ambien (Exh. 11F-20). The claimant continued to seek treatment from Dr. Luck for her interstitial cystitis and related urinary tract infections and was prescribed numerous medications including Cipro, Phenergan, and Urecholine (Exh. 11F-16-20). Dr. Luck's notes also indicate that the claimant was seeking treatment with a urologist (Exh. 11F-17-20), although no records from her urologist were provided. Records dated July 18, 2008, August 28, 2008, and September 30, 2008, note regular fittings for catheters (Exh. 11F-14-15, 17).

> On October 23, 2008, the claimant presented at UMC for an abdominal and pelvic CT scan, which like the June 2008 scan revealed no abnormalities (Exh. 3F-20). Specifically, the scan demonstrated the presence of a Foley catheter, but no acute intra-abdominal abnormality and no significant abnormality of the kidneys, ureters, or bladder (Exh. 3F-19-22). A few days later, she again presented at UMC, this time for catheter placement (Exh. 1F-4). It was noted that she had chronic, recurrent interstitial cystitis and that she needed to self-catheterize during episodes due to her inability to urinate (Exh. 1F-2, 4). The claimant continued to see Dr. Luck for her interstitial cystitis, who prescribed the additional medications of clindamycin and Sanctura XR (Exh. 11F-12). It does not appear that the claimant had many complaints regarding her interstitial cystitis, other than occasional dysuria and urine retention, between November 4, 2008, and March 20, 2010 (Exhs.

11F-2-12; 15F-2-13; 16F-2-25; 19F).

TR 18-19, *referencing* TR 266-80, 314-71, 430-63, 501-15, 516-58, 571-641.

As can be seen, the ALJ was aware of Plaintiff's interstitial cystitis and treatment. Because the ALJ was aware of Plaintiff's interstitial cystitis and determined that the record did not reflect that, between November 4, 2008 and March 20, 2010, she had many complaints regarding her interstitial cystitis beyond occasional dysuria and urine retention, the ALJ was not bound to incorporate limitations for this condition in his RFC determination.

With respect to Plaintiff's final contention that the ALJ erred by failing to consider the limitations related to her left carpal tunnel syndrome, the ALJ stated:

> Regarding her carpal tunnel syndrome, electrophysiological findings only suggested mild carpal tunnel syndrome and records do not indicate that this impairment has worsened or that the claimant has had to undergo surgical intervention.

TR 24, *referencing* TR 491.

Again, as demonstrated, the ALJ was aware of Plaintiff's left carpal tunnel syndrome and noted that records do not reflect that Plaintiff's mild carpal tunnel syndrome had worsened or that Plaintiff had undergone surgery for it. Accordingly, the ALJ did not need to incorporate left carpal tunnel syndrome limitations into his RFC determination.

After considering the evidence in its entirety, the ALJ properly determined that Plaintiff had the residual functional capacity to perform light work with some additional exertional and nonexertional limitations. As discussed above, the ALJ, in fact, included limitations related to Plaintiff's asthma and need to self-catheterize in his hypothetical questions to the VE.

Additionally, the ALJ did not err in failing to include limitations related to Plaintiff's left carpal tunnel syndrome for the reasons discussed herein. Because the ALJ properly considered the evidence of record and substantial evidences supports the ALJ's RFC determination, the ALJ's determination is proper; Plaintiff's contentions on this point fail.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judge